IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 1:03CV00783

FILED
OCT 0 1 2004
IN THIS OFFICE
Clerk U. S. District Court
Greensboro, N. C.
By _____

| | | |
|---|---|---|
| VIOLET LUMOA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | PLAINTIFF'S RESPONSE TO |
| | ) | DEFENDANT'S SUMMARY JUDGMENT |
| JOHN E. POTTER, | ) | MOTION |
| POSTMASTER GENERAL, and | ) | |
| THE UNITED STATES POSTAL | ) | |
| SERVICE, | ) | |
| | ) | |
| Defendants. | ) | |

## NATURE OF THE CASE

In her complaint, Plaintiff asserts a claim of sex discrimination pursuant to Title VII (42

U.S.C. §2000(e)), et seq. Plaintiff contends that she was treated differently than male employees

under similar circumstances.

## STATEMENT OF FACTS

Plaintiff accepts the Statement of Facts by Defendant except as modified herein.

In support of this Response, Plaintiff submits Plaintiff's Answers to Defendant's

Interrogatories, Production of Documents and Admissions.

Among other things, Supervisor Charles F. Martin acknowledged that Mr. Palumbo had a

different personality and that a complaint had come to him by Cookie Scott, APWU Union

Steward about a Clerk's complaint (Plaintiff's Submission F). Edward McLean, Relief

Supervisor, acknowledged that another female employee complained about Mr. Palumbo

1

(Plaintiff's Submission E). Michelle Apple states that McLean sent her to Frank Martin, the Maintenance Supervisor, to explain what happened and he responded that "there have been several complaints on Palumbo," (Plaintiff's Submission B).

There is no evidence that male employees are subject to the same treatment.

## QUESTION PRESENTED

Whether the Defendants United States Postal Service is entitled to judgment as a matter of law on Plaintiff's allegations that she was discriminated against based on her sex (female), when on September 1, 2001, a co-worker pushed a ladder into a U-cart that pushed up against a machine causing injury to her shoulder?

## ARGUMENT

### I.    SUMMARY JUDGMENT STANDARD.

The standard for summary judgment requires that judgment be granted for the movant if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is proper if no genuine issue of material fact exists. Rule 56(c). The Court's inquiry focuses on the facts which form the elements of plaintiff's claims. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986). Not every dispute about material facts is genuine. Colorable evidence or evidence not significantly probative does not create a genuine issue of fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505 (1986). "Genuineness means that the

2

evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), abrogated on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775 (1989). Uncontroverted evidence produced by the movant must be taken as true and will negate elements of plaintiff's claims. Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1048 (5th Cir. 1996). In considering the evidence, all reasonable inferences are to be drawn in favor of the non-moving party. Anderson, 477 U.S. at 255, 106 S.Ct. at 2513.

## HOSTILE WORK ENVIRONMENT

A hostile environment based on sex need not be based on sexual advances, it also may evolve non-sexual behavior directed at the Plaintiff because of gender. Co-worker harassment is a hostile environment. The power of peers to inject fear and anxiety into the workplace is evident in many co-worker harassment cases.

To establish a hostile work environment claim, a plaintiff must prove: (1) that she was harassed because of her sex; (2) the harassment was unwelcome; (3) that the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) that some basis exists for imputing liability to the employer. Hartsell v. Duplex Products, Inc., 123 F.3d 766 (4th Cir. 1997) (citations omitted).

### A.    Harassment Because of Sex.

Courts now generally recognize that offensive gender-based conduct need not be sexual in nature to be actionable as sex discrimination forbidden by Title VII. Delgado v. Lehman, 665 F.Supp. 460, 43 F.E.P. Cases 593 (E.D.Va. 1987) (sexual harassment may consist of verbal abuse of women if it is sufficiently patterned and caused by sex of harassed employees.) The leading case of McKinney v. Dole, addressed the issue thusly:

3

> "We have never held that sexual harassment or other unequal treatment of an employee must, to be illegal under Title VII, take the form of sexual advances or of other incidents with clearly sexual overtones . . . . Rather, we hold that any harassment or other unequal treatment of an employee or group of employees that would not occur but for the sex of the employee or employees may, if sufficiently patterned or pervasive, comprise an illegal condition of employment under Title VII."

McKinney v. Dole, 765 F.2d 1129 at 1338 (D.C.Cir. 1985).

In Oncale v. Sundowner, the Supreme Court recognized that gender-based animosity may evidence itself in sexual speech and behavior, or be nonsexual in nature although motivated by and occurring because of the gender of the complainant. Oncale v. Sundowner Offshore Servs., Inc.

, 118 S.Ct. 998, 76 FEP Cases 221 (1998).

There is no evidence to show that males in the work place were subjected to the disadvantageous terms and conditions of employment as female employees. A reasonable trier of fact might rationally infer that the form of verbal, physical abuse and gestures reflect a gender animus. See Grassmuck v. Chinn Enterprises, Inc., 1998 WL 177858 (M.D.Ill. 1998)

**B.      Harassment was Sufficiently Severe or Pervasive to Create an Abusive**
         **Working Environment.**

The Fourth Circuit has identified the following four factors in determining whether a work environment is hostile or abusive:  (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. See Smith v. First Union National Bank, 202 F.3d 234, 242 (4th Cir. 2000), citing, Harris v. Forklift Sys., Inc., 510 U.S. 17, 126 L.Ed.2d 295, 114 S.Ct. 367 91993).

4

The abusive and offensive conduct in the instant case shows multiple offenses by the same person, directed at females generally. In Egger v. Plumbers Local 276, 644 F.Supp. 795, 797, 41 FEP Case 1465 (Miss. 1986), a co-worker pulled a ladder out from under a female worker and shoved a steel pipe into her ribs while both were on a plumbing job,

Plaintiff has offered proof that the circumstances interfered with her ability to perform her work and significantly affected her psychological well-being, Paroline v. Unisys Corp., 879 F.2d 100 (4th Cir.).

Some courts have indicated that whether a hostile environment has existed in a given case will rarely be resolved by summary judgment. Blesedell v. Mobile Oil Co., 708 F.Supp. 1408 (S.D.N.Y. 1989) (question whether reasonable persons work performance or psychological well-being would have been adversely affected must be answered on a full record and upon evaluation of live testimony).

### C. Defendant Did Not Take Prompt and Appropriate Action.

The employers' liability is usually a matter of failing to correct harassment, Paroline v. Unisys Corp., supra.

An employer should not be found to have exercised reasonable care to prevent and correct any harassing behavior if the workforce has received no training on preventing and reporting harassment. Faragher v. City of Boca Raton, 118 S.Ct. 2275, 2293, 77 FEP Cases 14 (1998).

As in Katz v. Dole, supra, the anti-harassment policy of defendant was not effective. Moreover, as in Katz, the supervisory personnel manifested unmistakable acquiescence in or indifference to the harassment.

The facts in this case support Plaintiff's hostile work environment claim because of sex.

5

## CONCLUSION

This case presents disputed material facts to be resolved at trial. Therefore, summary judgment should be denied except as noted.

This the **30** day of September, 2004.

Romallus O. Murphy
Attorney for Plaintiff
1106 E. Market Street
P. O. Box 20383
Greensboro, NC 27420
336-273-1698

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he has this day served the foregoing Plaintiff's

Response to Defendant's Summary Judgment Motion by depositing a copy of the same in the

United States mail, in a first-class postage prepaid envelope addressed as follows:

> Gill P. Beck
> Assistant United States Attorney
> 101 South Edgeworth Street
> Suite 400
> P. O. Box 1858
> Greensboro, North Carolina 27401
>
> James E. Champion, Jr.
> United States Postal Service Law Department
> Philadelphia Field Office
> P. O. Box 40595
> Philadelphia, PA 19197-0595

This the 3 0 day of September, 2004.

> Romallus O. Murphy
> Attorney at Law
> N. C. Bar No. 3177
> P. O. Box 20383
> Greensboro, NC 27420
> 336-273-1698
> 336-274-7947 (F)

7

# PLAINTIFF'S SUBMISSION "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

VIOLET LUMOA,     )
            )
     Plaintiff,  )
            )
   v.        )   CASE NO. 1:03CV00783
            )
JOHN E. POTTER,     )
POSTMASTER GENERAL, and  )
THE UNITED STATES POSTAL  )
SERVICE,        )
            )
     Defendants. )

## PLAINTIFF VIOLET LUMOA'S RESPONSE TO DEFENDANT UNITED STATES POSTAL SERVICE FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF

Defendant incorporates the definitions and instructions set forth herein. Please produce the original or legible copies of the following:

  1.  All documents identified in response to Defendant's First set of Interrogatories.

**RESPONSE:** Submitted.

  2.  All documents that support your claim for damages, including any claim you may have for compensatory damages.

**RESPONSE:** None.

  3.  All documents which you contend support the allegations made in your Complaint.

**RESPONSE:** Submitted.

1

4.      All correspondence, memoranda, records, personal notes and other writing or documents of every kind whatsoever in your possession that pertain or relates to the allegations contained in your Complaint and administrative appeal.

**RESPONSE:** None.

5.      All statements and/or affidavits both sworn or unsworn, concerning any and all events, incidents, or occurrences related to the matters raised in the Complaint. Said statements should include all those submitted to any federal agency, court or administrative body.

**RESPONSE:** Submitted.

6.      All documents you intend to introduce at trial.

**RESPONSE:** All documents to be introduced at trial have not been identified.

7.      All documents to which you referred or relied upon in answering Defendant's First Set of Interrogatories.

**RESPONSE:** Submitted.

8.      All tape recordings that relate in any way to the allegations in the Complaint or this lawsuit.

**RESPONSE:** None.

9.      Produce all documents or other tangible evidence that substantiates, refutes, or relates in any way to any or all of the allegations that you have made in this civil action.

**RESPONSE:** None.

10.     Produce all notes, memoranda, diaries, records, written materials and recordings of any kind which you have compiled in connection with your employment at the Postal Service.

**RESPONSE:** None.

2

11.    Produce any and all documents that refer or relate to or reflect any consultations

and/or services that you received from any health care provider or therapist referred to in

Interrogatory responses.  Please attach to your Response to these Discovery Requests a signed

authorization for the release of medical records.  Please utilize the attached form for this purpose.

**RESPONSE:** None.

This the _4_ day of May, 2004.

Romallus O. Murphy
Attorney for Plaintiff
1106 E. Market Street
P. O. Box 20383
Greensboro, NC  27420
336-273-1698

3

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that he has this day served the foregoing Plaintiff's

Response to Defendant United States Postal Service First Request for Production of Documents

to Plaintiff on defendants by depositing a copy of the same in the United States mail, in a first-

class postage prepaid envelope addressed as follows:

Gill P. Beck
Assistant United States Attorney
101 South Edgeworth Street
Suite 400
P. O. Box 1858
Greensboro, North Carolina 27401

James E. Champion, Jr.
United States Postal Service Law Department
Philadelphia Field Office
P. O. Box 40595
Philadelphia, PA 19197-0595

This the _4_ day of _May_, 2004.

Romallus O. Murphy
Attorney at Law
N. C. Bar No. 3177
P. O. Box 20383
Greensboro, NC 27420
336-273-1698
336-274-7947 (F)

4

# PLAINTIFF'S SUBMISSION "B"

| 1. Affiant's Name (Last, First, MI) | 2. Employing Postal Facility |
|---|---|
| Apple, Adrienne Michelle | Greensboro P&DC |

| 3. Position Title | 4. Grade Level | 5. Postal Address and Zip +4 | 6. Unit Assigned |
|---|---|---|---|
| Mail Processing Clerk | 5 | 1120 Pleasant Ridge Rd Greensboro NC, 27409 | PL 151 |

## Privacy Act Notice

Privacy Act Notice. The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other

benefits; to a congressional office at your request, to an expert, consultant or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

## USPS Standards of Conduct

Postal Service regulations require all postal employees to cooperate in any postal investigation.
Failure to supply the requested information could result in disciplinary action. (ELM 666)

7. Statement (*Continue on Form 2569 if additional space is required*)

My name is Adrienne Michelle Apple. I am a mail processing clerk on tour 1 and I work in pay location 151 at the Processing & Distribution Center located in Greensboro NC. I have been in mail processing since February 13, 1999. My pay changed from a level 4 to a level 5 on March 23, 2002. Then in may 2002, my position title was changed to a mail processing clerk. I am a female. On September 1, 2001 Violet Luoma and I were machine partners on DBCS #9. Yes, I did witness the incident that took place between Richard Palumbo and Violet Luoma. On September 1, 2001, Violet Luoma and I were working on DBCS #9. We were having problems getting the mail to come off of the TMS chute. We called for an E.T. Keith Murphey come over and pulled some of the down and said he would be back to get the rest after he checked on another machine. Violet and I ran the mail that we had and were waiting

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---|---|
| A. Michelle Apple | Aug 27, 2002 |

PS Form 2568-B, March 2001

35          AFFIDAVIT E, Page #1

for the E.T. to return. Richard Palumbo was working directly across from us on DBCS #6. Mr. Palumbo was angry and slamming things around on that machine. He saw that we were waiting, left the machine he was currently working on and came over to DBCS #9. He was very angry when he came over. Mr. Palumbo was cursing and complaining about empty trays and equipment being in his way. I had started moving the trays out of his way and walked in between the feeder and the reader of the machine. Mr. Palumbo was cursing and trying to push a ladder to fix the TMs. Violet Luoma was trying to move a u-cart out of the way and he started coming toward her with the ladder. Violet told Mr. Palumbo that she needed to move the u-cart first, but he continued to push the ladder until it hit Violet and pushed her against the machine. Mr. Palumbo then climbed the ladder, and I yelled at him that he had just hit his Violet. Mr. Palumbo stopped, looked down at Violet and then continued to climb the ladder. Mr. Palumbo fixed the machine and left. I then went and told my supervisor what had happened. My supervisor, Eddie McLean, sent me to the maintence supervisor, Frank Martin, to explain what happened. When I went to Frank he said that there had been several complaints on Mr. Palumbo in the past several weeks and he would speak to Mr. Palumbo about what happened. Yes, it did appear that Mr. Palumbo knew that Ms. Luoma was there. Ms. Luoma told Mr. Palumbo that she needed to move the u-cart so the ladder could be at the TMS. Mr. Palumbo

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---|---|
| R. Michell Apple | Aug 27, 2002 |

PS Form 2569, March 2001

36

AFFIDAVIT E, page 2 of 1


was looking at Ms. Luoma. However he continued to move the ladder and hit her. When he climbed the ladder I was yelling at him, that he had hit Ms. Luoma. Mr. Palumbo stopped, looked at Violet and continued to climb the ladder. I feel that Mr. Palumbo pushed the u-cart into Ms. Luoma in a hostile manner. Mr. Palumbo had been on DBCS #6 slamming equipment and came to DBCS #9 angry and very snappy. Mr. Palumbo complained about our trays being in his way, when we had not called for an E.T. to come to our machine. I consider Mr. Palumbo's behavior to have been hostile. He came to the machine, unnecessarily, in a hostile manner and it escalated from there. Yes, I had a part in the incident. At that time Ms. Luoma and I were partners on DBCS #9. I saw Mr. Palumbo hit Ms. Luoma with a u-cart. I told Mr. Palumbo what he had done. I told my supervisor as well as Mr. Palumbo what happened. I feel that Mr. Palumbo has had an anger issue for a long time. His manner is hateful, in the way he speaks and acts several employees have complained about Mr. Palumbo in the past, and it was well known how he treated people, most employees leave the machine when Mr. Palumbo comes around, because no action is taken for the things he has done. I don't feel that any employee should feel threatened by another employee's anger or attitude. My new address is: 1801 Meadowview Dr, Graham NC 27253

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---|---|
| A. Michelle Apple | Aug. 27 2002 |

PS Form 2569, March 2001

**AFFIDAVIT**

I have read the proceeding attached statement, consisting of __3__ pages, and it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001, Title 18 of the U.S. Code which states:

"Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and wilfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both."

## Privacy Act Notice

Privacy Act Notice. The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses,

grants or other benefits; to a congressional office at your request, to an expert, consultant or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

## USPS Standards of Conduct

Postal Service regulations require all postal employees to cooperate in any postal investigation.
Failure to supply the requested information could result in disciplinary action (ELM 666).

## Oath / Affirmation

Subscribed and (sworn) (affirmed) before me on this _____day of _____, 20_____

| Signature of EEO Complaints Investigator | Affiant's Signature (Sign in the presence of EEO Investigator) |
|---|---|
| | Signature of Affiant |

## Declaration

I declare, under penalty of perjury, that the foregoing is true and correct.

*(Affiant, sign and date if attached statement was not completed in the presence of the EEO Investigator.)*

| Affiant's Signature | Date Signed |
|---|---|
| A. Michelle Appel | Aug. 27, 2002 |

PS Form 2571, May 2001

38    AFFIDAVIT E

9/1/01   4:30 am

Supervisors   Leslie Pinnix
              Eddie Mac

One September 1, 2001, I Robin
Moore and my partner on machine
DBCS No 6 in pay location 151
were running mail when the
machine jammed, 6 times in the
same place. I told Eddie to call
for a ET. Richard Palumbo came
to the machine. While working on
the machine he became angry,
slamming doors snatching mail
off the rack. Cursing & acting
very hostile. He left the machine
and went over to DBCS No 9 and
pushed a cart. Then came back
to DBCS No 6 and acted really
hostile then. At that time I went
to Eddie Mac & told him that he
needs to talk to Palumbos supervisor
and he didn't respond. I then
went into the maintanence department
and ask for Palumbos supervisor.
Issac Issac Maynard told me
that Frank Martin was in a

EXHIBIT

meeting and to come back. About 20 minutes later. Dee Fulton went in the office to talk to Frank Martin, he would not talk to Dee Fulton. Frank Martin told her to write a statement and give this to her Supervisor. We didn't think this was fair. Eddie Mac did not even ask me (Robin Moore) what was going on but he help Michelle Apple, and Violet Luna. I was so upset I was ready to go home. Also whenever Palumbo comes to the machine he passes so close that we have to move away so he won't brush up against you.

Robin M Moore

Robin M Moore

EXHIBIT 16 Page 232

On the morning of April 12, 2000
approximately 0200 hour I called
for an ET over the intercom. Within
a few minutes an ET, Palumbo approached
DBCS #9. Thomas McLendon and I,
Adrienne Maddox waited at the top of
the machine (by the feeder).

Palumbo looked at the door area
behind the feeder and asked
where the jam was. I informed
him I didn't know that's why we called
an ET.

He then looked at the Computer.
As he walked around to computer he
and I shuffled to get out of each other
way. I said, "Oh I'm in the way." He
nastly said, Yes, you are. I stepped
to the side so he could do his job.
Mr McLendon and I chatted as he
worked.

EXHIBIT 23, page 1 of 4
DOVCB036 (4 Pages)
ATT #5 (Page 1 OF 4)

"While he worked on the computer in
front of the feeder, I walked behind
feeder and got something from my pur[se]
I didn't notice him standing there at f[e]
until he said, "You wanna call me wh[en]
you're ready?" I said "Excuse me, rea[dy]
for what?" He said, "I said you i[n]
in the way." I ~~said~~ asked, "Are you upse[t]
because you have to do your job?"
He continue on by saying "Why don't
go on break or something and get [out]
of the way?"

I asked him who he was talk[ing]
to. Then I said why am I ~~talkin~~
to you anyway. I went to get my
supervisor Tony Hairston - T1. When he
got to my machine I told him h[ow]
Mr. Palumbo got smart and asked h[im]
to speak to him. He called his sup[e]
204B Eddie Bayonna and he came over.
advised him of the situation. He agreed
there have been other complaints about
Mr. Palumbo and advised me to file a

EXHIBIT 2

Grievant's statement Pg 20 of 4

23 - Ag 20 of 4

wanted to die. He said he would find
out how to do so. He later returned
at about 0315 and said he spoke to
Mr Blumbo and told me I would
have to go through my own supervisor
I then called my supervisor and
told him I needed a steward.
He (Tony) said, "I'll tell you now
you can't grieve another clerk." I
said, "well, you, me and my steward
need to sit down and decide how
to handle this situation. because I
~~am~~ am very upset about it."

He (Tony) came back told me Jim Ross
would see me after 0500 (his lunch). I
inquired as to why Wilamenia Williams
(who I thought was my steward) could not
see me, & he said, Ray Davis was my
steward and Mr Ross was my alternate.
I thought I was suppose to see my
regular steward next in line or who
was at least at work before an ⑰

4) Should har known.

Adriann Maddy
4/16/00
0615
PL 151

OVCB03L
T. #5 (4 Pages)
Ag c 4 of 4)

EXHIBIT 23
page 4 of 4

75

Thursday, Oct. 26, 2000 on the 0500 hour I requested an ET Plumbo came to my machine DBCS #15 to assist us. He asked what the problem was and I told him there was a jam. I continue to talk to Sam Teresa) while Plumbo got the jam out

Approximately 1-2 minutes later he stood up and walked away. We (Sam & I) assumed the machine was fixed, even though Plumbo said nothing. We began the to run the machine and it jammed again before Plumbo left the machine.

He turned around and we asked him if it was fixed. He yelled something and then just waved his hand as if he were frustrated and walked off.

Sam called Frances Weaver and she called Eddie Bayone which was Plumbo's supervisor for the night. Mr Bryona, Called

and asked him if he was working on DBCS #15. Plumbo responded and said, yes and ~~he~~ said he asked if the form was in the same place but he didn't get a response from "Adrienne."

While Mrs. Weaver & Mr. Reyna were still present Plumbo returned to the machine DBCS #15. He became upset and appeared hostile as he paced back and forth. He then said, "The way Tracy answers y'all's calls I don't know why you're saying anything to me." San & he had a few words I left it alone (the subject because I was getting nervous and upset.

Later I needed an ET again and A.D. came to DBCS 15 and Plumbo came as well. A.D. told him he had the call, but Plumbo stayed.

I felt like under the circumstances he (Plumbo) should have not come to the machine

I felt intimidated and again became nervous and began to shake. I then went to Sandra Marion and Frances Weaver and told them I felt like his arrogance was unnecessary and I felt I was in a hostile environment. Sandra called Mr. Barjona and I again explained my situation to Mr. Barjona. They advised me to put this in writing.

Adrienne Josey Maddox
Oct. 30, 2000
2350

EXHIBIT 20
page 342

11-30-00

## WITNESS STATEMENT #2

TOUR 1 ET MAINTENANCE MAN, RICHARD PALUMBO CAME OVER TO
WORK ON MY MACHINE ( DBCS # 8) ON 10-26-00. WE HAD NOT CALLED FOR
AN ET BUT WE THOUGHT THAT HE WAS JUST DOING ROUTINE
MAINTENANCE.

HE HAD AN ATTITUDE AS USUAL. WE (ME AND MY PARTNER, KIM
WATKINS) ASKED WHAT WAS WRONG. SO HE STARTED TO TELL US. HE
SEEMED TO BE VERY UPSET WITH ADRIENNE MADDOX WHO WAS
WORKING IN PL 150. SHE HAD CALLED FOR AN ET AND I THINK HE MAY
NOT HAVE REALLY WANTED TO FIX HER MACHINE. SO HE COMPLAINED
ABOUT HER STANDING IN HIS WAY. BUT I DON'T THINK HE ASKED HER TO
MOVE. HE THOUGHT SHE COULD READ HIS MIND. THE WAY HE WAS
ACTING WAS VERY AGITATED AND ANGRY. THEN WHEN SHE FINALLY
ASKED HIM IF HE WANTED HER TO MOVE, HE DIDN'T ANSWER HER. JUST
THOUGHT SOMETHING LIKE, "YOU'RE STANDING IN MY WAY, AREN'T
YOU?"

WE DID TELL ADRIENNE ABOUT WHAT HAPPENED BECAUSE HE WAS
ACTING SO ODDLY. WE THOUGHT THAT SHE SHOULD BEWARE OF HIM.

ANNETTIA WATTLINGTON
PL 151

*Annettia J. Wattington*

OOVCB036
ATTACHMENT #3

**EXHIBIT 22**

7/

Witness Statement #4     May 03, 2000

I was working on DBCS #4 and
the label machine malfunctioned.
I called an ET to DBCS #4. Shortly
Palumbo came to #4. Palumbo's
demeanor was extremely nasty. He
said "What do you want?" I told
him the problem. Palumbo looked
at the label machine and quickly
turned around and said "There's nothing
wrong with it." I told him that it
would not print labels. He (Palumbo)
just walked away. So I called for
his supervisor, Isaac. I let Isaac
know that I didn't have to tolerate
his employees behavior. Isaac informed
me that he was short of help. (So does
his employee need an attitude adjust-
ment) and USPS clerks can be
disrespected when they need maintenance
on the machine to successfully process
the mail for dispatch? -

20VCB031
II.# 6

Respectfully Submitted,

Brenda Cotten          EXHIBIT 24

(32)

UNITED STATES
POSTAL SERVICE

February 18, 1990

PCES EXECUTIVES

SUBJECT: Voice of the Employee Workplace Relationships

During the last several years, the Postal Service has attempted to address and resolve the complex issues associated with the workplace environment and the relationships with our employees and their representatives. Recently, we have made some progress and enjoyed certain successes. We need to build on that momentum and continue to strive to improve workplace relationships and to treat each individual with dignity and respect. To ensure success in this critical area, all managers and supervisors must take the lead and set a positive example to continue to improve workplace relationships at all levels of the Postal Service. Not only does this make ser... but it is the right thing to do as well.

fro... .our standpoint, we believe that our approach in focusing on the Voice of the Employee has several key elements:

EMPLOYEE TREATMENT

While the vast majority of managers and supervisors are capable concerning all aspects of their jobs, renewed emphasis must be placed on treating all employees *with dignity and respect*. Each of us knows how we wish to be treated. We must provide that same treatment to our employees at all levels of the organization. ...s stated at the National Executive Conference in Norman, Oklahoma, each of us is responsible for ensuring that we recognize our employees when they do a great job. Conversely, when employees make mistakes, we are responsible for ensuring that ...e and the employees learn from those mistakes. To the extent that any manager or supervisor cannot treat employees consistent with this philosophy, appropriate counseling should be conducted, followed by relevant training as necessary. If the manager or supervisor does not accept training or is not successful, other appropri-

CONTRACT COMPLIANCE

...mpha... .s must be placed on the corporate objective that all managers and ...pen... s must give the highest priority to compliance with our collective bar-...ining ...greements with the various unions. No manager or supervisor at any ...el of this organization has the authority to override the terms of those agree-...nts. Those collective bargaining agreements represent the commitment of the ...tal Service—that is, the commitment of each of us—to abide by the terms

contained therein, in our dealings with our employees. Appropriate corrective action should be considered for any manager or supervisor who knowingly, or repeatedly, violates the clear terms of any of those agreements.

In keeping with that responsibility, all managers and supervisors are expected to resolve meritorious employee complaints and/or grievances at the lowest possible level. That includes handling grievances within the contractual time limits and promptly implementing any settlements agreed to or remedies awarded. Managers or supervisors who have questions regarding the legitimacy of a complaint or griev-ance should avail themselves of the necessary labor relations guidance and support.

Compliance with contractual terms and prompt resolution of meritorious cases will enable us to concentrate our efforts on vigorously defending those cases in which we believe no violation has occurred. It will also lend support to our statements to the unions that the filing of repetitive or frivolous grievances is not conducive to a mature collective bargaining relationship and must be halted at once.

COMMUNICATIONS

Responsible managers are to ensure that they are conducting regularly schedul... Labor-Management Committee meetings as outlined in our collective bargaining agreements. These meetings are excellent communications vehicles to address, resolve, or diffuse local issues. Additionally, whenever necessary, managers should communicate with local union officials to keep them informed of local matters which they should be aware.

While these key elements may seem ambitious, their accomplishment is critical to the continued success of the Postal Service. Additionally, there can be no doubt that this is the correct direction for us to pursue as an organization.

We are counting on each of you to assure that this focus on the Voice of the Employee is communicated to all operations managers and supervisors within your respective areas and that they vigorously pursue its accomplishment.

Anthony M. Frank
Postmaster General

Michael S. Coughlin
Deputy Postmaster General

William J. Henderson
Chief Operating Officer
and Executive Vice President

COVCB 036
ATT # 14

SENIOR MANAGER
GREENSBORO PROCESSING & DISTRIBUTION CENTER



**UNITED STATES**
**POSTAL SERVICE**

November 24, 1999

(REISSUED)

MEMORANDUM FOR:      All Employees
Greensboro P & DC
Greensboro P & DC (Annex)
Greensboro Air Mail Center

SUBJECT:        Basic Work Rules and Regulations

This notice supersedes and cancels all previous work rules and the following is posted on all official bulletin boards for your information, guidance, and compliance. This notice is effective upon receipt.

<u>BASIC WORK RULES AND REGULATIONS FOR ALL EMPLOYEES</u>

ALL EMPLOYEES ARE REQUIRED TO:

1.    Report for duty as scheduled, wear proper shoes and begin work promptly after clocking in for duty and leave work area immediately at the end of tour.
2.    Wear proper clothing and display a neat and clean appearance.
3.    Display badge at all times (picture showing). Challenge any individual on workroom floor, vendateria and dock areas who does not display badge.
4.    Check in with Manager, Distribution Operations to receive permission to visit the facility when you are in a non-duty status.
5.    Perform all assigned duties efficiently and obey the instructions of your supervisor.
6.    Show courtesy to customers supervisors and fellow employees.
7.    Use safe work practices at all times in accordance with postal policy.
8.    Conduct yourselves in a manner which would reflect favorably upon the Postal Service.
9.    Observe all smoking rules and regulations.
10.    Operate postal vehicles in a safe manner at all times.
11.    Report all accidents/injuries immediately.
12.    Enter and leave the workroom floor through designated doors only.
13.    Provide for the sanctity of the mails and report all violations of postal law; including irregular practices involving the handling of stamps, funds, or accountables.
14.    Observe good housekeeping practices at all times including the removal of trash and refuse from the tables in the vendateria and after use.
15.    Park private vehicles only in authorized spaces when parking on postal property.
16.    Have valid parking sticker on rear bumper, right side.
17.    Observe local policy concerning the use of radios. MPLSM operators while actually keying at consoles and distribution clerks while working in a stationary position will be permitted to wear self-contained radio headsets. When an employee wearing a headset moves from one position to another, the headset must first be removed. The wearing of personal portable radio units or tape cassette headphones having wires leading to units worn or carried elsewhere on the body must be inside of shirt.
18.    Observe prescribed rotation on LSM, FSM or automated equipment.
19.    Cooperate in any postal investigation.
20.    Keep the installation head informed on your current address (complete Form 1216).

900 E. MARKET STREET
GREENSBORO, NC 27498-9700
(910) 271-5422
FAX: (910) 271-5501

78

EXHIBIT 26
Page 1 of 2

Basic Work Rules and Regulations

ALL EMPLOYEES MUST NOT:

1.  Read, review or in any manner appropriate any type mail matter at any time.
2.  Possess or consume or be under the influence of any alcoholic beverages or drugs while on duty.
3.  Create hazards to yourself or to others.
4.  Wear sunglasses on the workroom floor, unless required by a physician.
5.  Wear gloves while distributing mail at a case or machine unless required by a physician for a temporary medical problem.
6.  Engage in horseplay.
7.  Engage in excessive or loud and boisterous talking, abuse, threatening or profane language.
8.  Wear the follow types of shoes: Thong sandals, clogs, all types athletic shoes (the wearing of athletic shoes constructed of a natural or man-made firm leather upper which covers the entire foot and have firm, slip resistant outersoles and heels is permissible), tennis shoes, mules, house slippers, open-toed, open-heel, high heels (heels not to exceed 1 1/2 inches, measuring center back of heel to prevent leg muscle strain and ankle turns), cloth, mesh or other fabric shoes.
9.  Let hair hang longer than shoulder length while working around mechanized equipment (should keep in a net or pinned up).
10.  Engage in verbal or physical assault and other acts of insubordination against your supervisor or fellow employees.
11.  Allow family and friends on the workroom floor area (including vendateria), in restricted parking areas or on docks, unless authorized to do so.
12.  Move rest bars or chairs from one location to another without permission of a supervisor.
13.  Allow private vehicles to approach the dock area for the purpose of dripping off or picking up employees.
14.  Quit voluntarily or desert the mail before making proper disposition, as it is a criminal act for another who has taken charge of any mail.
15.  Wear loose clothing, including neckties and sash is prohibited.
16.  Wear shorts that are shorter than approximately five inches above the knee. Bermuda type or walking shorts are suggested. Hot pants and/or brief tennis shorts are not permitted. Scooter shirts also should not be worn on duty.
17.  Wear jewelry: Such as; bracelets, dangling earrings, necklaces, watches and ring s are prohibited. A post type earring which does not exceed 1/2" in diameter and a medical alert ankle bracelet will be permitted.

Anyone who fails to comply with these official rules and regulations is subject to appropriate disciplinary action.

NICHOLAS L. RINALDI

cc: Manager, Distribution Operations
Supervisor, Distribution Operations
Labor Relations Specialist (P & DC)
Official Bulletin Boards

*Customer Perfect! VOE - Safety VOC - EXFC VOB - Financial*

26 Page 2 of 2

# PLAINTIFF'S SUBMISSION "C"

**Violet I. Luoma, Mail Processor, Part Time Flexible, PS-04, Greensboro P&DC, Greensboro, North Carolina,** the complainant, alleged discrimination based on sex (Female) when on September 1, 2001, a co-worker pushed a ladder into a U-cart that pushed up against a machine, injuring her arm and shoulder.

## SUMMARY & COMPARATIVE ANALYSIS

*VIOLET I. LUOMA* **(Female)**, the Complainant, is represented by Cookie Scott, PO Box 14085, Greensboro, NC  27415-4085.  Since January 30, 1999, she has been a part-time flexible Mail Processor Clerk, Pay Location 151, Tour 1 (10:30 p.m. to 7:00 a.m.), Automation, Delivery Bar Code Sequence Machine, at the Greensboro Processing and Distribution Center, Greensboro, North Carolina.

*VIOLET I. LUOMA* feels she was discriminated against due to her sex (Female) when on September 1, 2001, she was running mail on Delivery Bar Code Sequence Machine #9 (DBCS) when some trays became stuck on the belt.  Electronic Technician (ET) Keith Murphy removed all but two of the trays and said he would return when they were ready for him to get the last two down.  Electronic Technician Richard Palumbo complained that the trays were still there, and yelled for them to move their empty trays and get the U-cart out of his way.  She picked the trays off the floor and put them on the belt.  As she stepped behind the U-cart and began to move it forward, Richard Palumbo pushed his ladder into the U-cart pushing her against the machine.  Michelle Apple yelled to him to stop, and then reported the incident to Supervisor Eddie McLean, Jr.  When Richard Palumbo walked away, she told him that she could not believe that he did that to her.  His response was that he did not see her there.  When she returned to her work she could feel that her arm and shoulder were injured.  She reported this to Supervisor McLean, was removed from the workroom floor, and went to the Emergency Room where she was treated for a sprained muscle to her arm and shoulder.  She was diagnosed with an arm and shoulder sprain, which turned out to be ligament damage that required surgery.  She testifies that she has limited use of her arm and her shoulder and is currently in therapy.  As of June 2002, she has been out of work for over nine months, has been to numerous doctors, and has undergone therapy as well as surgery.

(AFFIDAVIT A)

*EDWARD C. MCLEAN* **(Male, Supervisor, Distribution Operations, EAS-16, Greensboro P&DC)** testified that on September 1, 2001, he was a Tour 1 SDO in Operations and was in that position for seven years.  At the time of the complaint, he was a relief supervisor.  As far as he remembers, Violet Luoma did have an accident on that date.  She informed him that she was struck

*4*

by a U-Cart which was struck by a ladder that was being pushed by Electronic Technician Richard Palumbo. He had the employee complete all of the paperwork for her injury. Ms. Luoma did state that she thought that Mr. Palumbo pushed the ladder into her intentionally. At the time, he did not think that Mr. Palumbo's actions were hostile. Mr. Palumbo's supervisor at that time was Isaac Maynard. He spoke to Isaac Maynard about Mr. Palumbo, and he suggested to Violet Luoma to speak with his supervisor. He has no knowledge if Richard Palumbo received a discussion or any disciplinary action. **(AFFIDAVIT B)**

*ROGER N. QUINCOSES (White, Hispanic, Male, Manager Maintenance, Tour 2, Greensboro P&DC)* testifies that he has no professional relationship with Ms. Luoma. She reports to a Tour 1 mail processing supervisor. He is aware that on September 1, 2001, Ms. Luoma was involved in an on-the-job accident. Her supervisor, Eddie McLean, completed an accident report, which indicates who was involved and what happened. He had no official part in the accident or its investigation. The accident was investigated by the mail processing supervisor and the cause of the accident was "inattention on the part of the ET" (Mr. Palumbo). Mr. Palumbo's supervisor had a discussion with him regarding his need to follow all safety practices and rules and concerning the need for him to improve his safety awareness; he had no part in that discussion. Mr. Palumbo stated he did not see Ms. Luoma and when he noticed her blocked in, she did not indicate any discomfort. Mr. Palumbo reported to Charles P. (Frank) Martin who was the Tour 1 Maintenance Supervisor, and Mr. Martin reports to the Manager Maintenance Operations who reports to him. He was not aware that Ms. Luoma felt that Mr. Palumbo's actions were hostile until a month later (October 3, 2000) when a request for information was received from the APWU union. He testified that provisions of Article 17, Section 2, and Article 31, Section 3 were followed. **(AFFIDAVIT C)(Exhibits 10-14, 18-19)**

*CHARLES F. MARTIN* **(Male, Supervisor Maintenance, Tour 3, EAS-17, Greensboro P&DC)** testified that since March 2002, he has been assigned as Tour 3 Supervisor Maintenance Operations. Prior to that, he was the Tour 1 SMO effective March 2001. He testifies that he had no professional relationship to Ms. Luoma since she has worked as an operation's clerk. He was not aware of the accident at the time it happened, but was told of it a day or so later. He had no official part in the accident report generation. At the time of the accident, Mr. Palumbo was under his jurisdiction; he is not presently in charge of Mr. Palumbo. Ms. Luoma never reported to him about the incident. He personally does not know Ms. Luoma and does not believe that he has ever spoken with her. There was no discussion or discipline issued to Mr. Palumbo, since neither Ms. Luoma nor him were aware that an injury had taken place. He testifies that he does remember Cookie Scott, APWU Union Steward, coming into his office to say that some clerks (unknown to him) felt that Mr. Palumbo had a "brash" personality and did not present himself in a congenial manner. He agreed that Mr. Palumbo had a difficult personality, but he never, to his knowledge, cursed, harassed, intimidated, or bullied any individual. He called Palumbo into the office and asked him to try harder to present himself in a better light to others. He informed Mr. Palumbo of the complaint from Mrs. Cookie Scott. Mr. Palumbo responded that

he had done nothing out of the ordinary and some of the clerks just did not like him. Mr. Palumbo did agree to present a better attitude toward all employees. He testifies that he does not know Ms. Maddox, and she was not under his supervision. He does not know who her operations supervisor was. He testifies that he does not know Virginia Bridges. **(AFFIDAVIT D)**

*A. MICHELLE APPLE* (FEMALE, Tour 1, Pay Location 151, Greensboro P&DF) testified that she has been in mail processing since February 13, 1999. She testifies that on September 1, 2001, she and Violet Luoma were machine partners on DBCS#9. She witnessed and reported the incident between Richard Palumbo and Violet Luoma. She and Ms. Luoma were working on the DBCS#9 machine and were having problems getting the mail to come off of the TMS chute. They called for an ET, and Keith Murphy came and pulled some of the mail down and said he would be back to get the remainder after he checked on another machine. She and Ms. Luoma ran the mail they had and were waiting for the E.T. to return. Richard Palumbo was working directly across from them on DBCS#6. Mr. Palumbo was angry and slamming things around on that machine. He saw that they were waiting, left the machine he was currently working on and came over to DBCS#9. He was very angry when he came over cursing and complaining about empty trays and equipment being in his way. She began to move the trays out of his way and walked in between the feeder and the reader of the machine. Mr. Palumbo was cursing and trying to push a ladder to fix the TMS. Violet Luoma was trying to move a U-cart out of the way, and he started coming toward her with the ladder. Ms. Luoma told Mr Palumbo that she needed to move the U-cart first, but he continued to push the ladder until it hit Violet and pushed her against the machine. Mr. Palumbo then climbed the ladder, and she yelled at him that he had just hit Violet. Mr. Palumbo stopped, looked down at Ms. Luoma and then continued to climb the ladder. Mr. Palumbo fixed the machine and left. She then went and told her supervisor, Eddie McLean, what had happened. Supervisor McLean sent her to the maintenance supervisor, Frank Martin, to explain what happened. When she went to Mr. Martin, he said that there had been several complaints on Mr. Palumbo in the past several weeks, and he would speak to Mr. Palumbo about what happened. She testifies that it appeared that Mr. Palumbo knew that Ms. Luoma was there. Ms. Luoma told Mr. Palumbo that she needed to move the U-cart so the ladder could be at the TMS. Mr. Palumbo was looking at Ms. Luoma. However, he continued to move the ladder and hit her. When he climbed the ladder, she was yelling at him, that he had hit Ms. Luoma. Mr Palumbo stopped, looked at Violet, and continued to climb the ladder. She feels that Mr. Palumbo pushed the U-cart into Ms. Luoma in a hostile manner. Mr. Palumbo had been on DBCS #6 slamming equipment and came to DBCS #9 angry. Mr. Palumbo complained about their trays being in his way, when they had not even called for an E. T. to come to their machine. She considers Mr. Palumbo's behavior to have been hostile. He came to the machine unnecessarily in a hostile manner, and it escalated from there. **(AFFIDAVIT E) (Exhibit 2)**

*6*

*VIOLET I. LUOMA* testifies that prior to the injury caused to her by Mr. Palumbo, that other female employees had made complaints to management about his harassing behavior. They are:

1) Adrienne Maddox, Mail Processor, Pay Location 151, who had numerous problems with Mr. Palumbo creating an unsafe working environment for her and that management did nothing to stop his harassment of her after she made numerous complaints to her supervisor.

2) Carrie Scott, Mail Processor, Pay Location 150, who will testify that during a meeting, supervisor Julie Rutherford, stated that she tried to discipline Mr. Palumbo because he referred to her as a bitch, but Labor Relations told Ms. Rutherford that the employee's supervisor had to be the one to issue the discipline.

3) Virginia Bridges, Distribution Clerk, Pay Location 151, had problems with Richard Palumbo but management failed to handle his behavior which could have prevented her injury.

**(AFFIDAVIT A)**

*EDWARD C. MCLEAN* testified that he did have another female employee tell him that Mr. Palumbo had a bad attitude, but is not sure which one of his employees told him that. He testifies to the following in regard to Ms. Luoma's comparison employees:

1) He knows of Adrienne Maddox who is assigned to another pay location (PL 150). He is not aware of any problems between her or Mr. Palumbo.

2) Carrie Scott is assigned to the same pay location as Adrienne Maddox (PL 150); supervisors are Peggy Smith and Sandra Mario. He has no knowledge of any complaints by her in regard to Mr. Palumbo.

3) Virginia Bridges was assigned to his location at the time. She is a Union Steward as is Carrie Scott. Ms. Bridges has been on light duty for more than five years and works in the manual section; he rarely saw her on a daily basis. He is not aware of any complaints by Virginia Bridges. **(AFFIDAVIT B)**

*VIOLET I. LUOMA* feels that her injury could have been prevented if Postal Management had taken the complaints made by other employees (prior to her injury) and against Richard Palumbo, seriously. She feels that Mr. Palumbo's harassment to female employees has created a hostile working environment. She testifies that despite all of the complaints filed, his behavior continued. She feels that Postal management failed her and placed her livelihood at risk, not to mention her health. She testifies that on September 9, 2001, Supervisor McLean was asked why he did not speak to Mr. Palumbo's supervisor after her injury occurred, and he responded that was not his job. She states that his response made her feel worthless to the Postal Service. **(AFFIDAVIT A)**

*ROGER N. QUINCOSES* testified that prior to September 1, 2001, they had received a request from the APWU on July 22, 2001. As far as he is aware, Ms. Luoma did not complain to any maintenance supervisor and the only individual who mentioned anything was Julie Bradford.

**(AFFIDAVIT C) (Exhibit 13)**

**EEO INVESTIGATOR NOTE:** The Postal Service Employee Information System does not show a record for a Julie Bradford, Greensboro P&DC

17

*VIOLET LUOMA* testifies that when employees are hired by the Postal Service, they are told that the Postal Service has a Zero Tolerance Policy on violence in the service. Therefore, her incident should never have occurred. She feels that the Postal Service caused her injury when they failed to correct Mr. Palumbo's behavior and tolerated his abusive and harassing behavior. She names the following as those responsible for her injury:

1) Roger Quincoses, Manager Maintenance, EAS-23. She feels that he failed to take any action regarding any of the female employee complaints regarding Mr. Palumbo.
2) Frank Martin, Supervisor Maintenance Operations, EAS-16. She testifies that he refused to hear from Robin Moore and Dee Fulton, co-workers, of Mr. Palumbo's behavior on their machine on the day she was injured. **(Exhibit 16)**
3) Edward McLean, Jr., Supervisor Distribution Operations. She feels that his words showed he did not value her life and safety.

**(AFFIDAVIT A)**


*EDWARD C. MCLEAN* testified that the U. S. Postal Service does have a zero tolerance in the work place. **(AFFIDAVIT B)**


*ROGER N. QUINCOSES* testified that he does not believes this accident was a violation of the Zero Tolerance Policy of Violence in the Workplace. The accident report did not indicate that such an action had taken place. **(AFFIDAVIT C)**


*VIOLET LUOMA* feels the following employees were treated differently than she was because they are male.

1) Marvin Weems (Black, Male), Mail Processor, Pay Location 151. Mr. Weems works on the Delivery Bar Code Sequence Machines and has an Electronic Technician Richard Palumbo service his machine. Mr. Weems has never been injured by Mr. Palumbo. **(Exhibit 7)**
2) King Core (Black, Male), Mail Processor, Pay Location 151. Mr. Core works on the Delivery Bar Code Sequence Machines and has Electronic Technician Richard Palumbo service his machine. Mr. Core has never been injured by Mr. Palumbo. **(Exhibit 8)**
3) Kevin Priestley (White, Male), Mail Processor, Pay Location 151. Mr. Priestley works on the Delivery Bar Code Machines and has had Electronic Technician Richard Palumbo service his machine. Mr. Priestley has never been injured by Mr. Palumbo. **(Exhibit 9)**

**(AFFIDAVIT A)**


*Record evidence* places Marvin Weems in Pay Location 150 at the time of the incident at issue in this complaint (09/01/01); not Pay Location 151 as Ms. Luoma testifies to above. **(Exhibit 7)**

*ROGER N. QUINCOSES* testified that the type of accident in which Ms. Luoma was involved has happened before with other employees. He is aware of two accidents. In one case, a White Female supervisor pushed a container which caused an injury to a Male custodian. In another case, a mailhandler pushed a container that resulted in injury to a mechanic. In both cases, it was a lack of attention to proper procedure that caused the accidents just as in the case of Mr. Palumbo and Ms. Luoma. Mr. Palumbo has never hurt any other employee, and in this case he believes the accident was caused by a lack of attention on his part. **(AFFIDAVIT C)**

*VIOLET LUOMA* testified that the following employees are witnesses to the events of September 1, 2001, and the behavior of Mr. Palumbo that night.
1) Michelle Apple, Mail Process, Pay Location 151, who witnessed the scene.
2) Robin Moore, Mail Processor, Pay Location 151 who can testify to Mr. Palumbo's behavior after leaving her machine after injuring her. **(AFFIDAVIT A)(AFFIDAVIT E) (Exhibit 16)**

*VIOLET I. LUOMA* testified that she filed a grievance, which is being held in abeyance until it is clear that she is able to return to work. **(AFFIDAVIT A)**

*ROGER N. QUINCOSES* testified that Ms. Luoma did not contact any maintenance supervisor or him regarding this matter; she decided to pursue this matter as a grievance. The APWU requested information and filed a grievance, which was settled at Step 2. **(AFFIDAVIT C)(Exhibit 12)**

MATRIX: (All employees of the Greensboro P&DC)

| Employee Name | Position/ Grade | Sex | Pay Location/ Supervisor | Record Evidence Exists of Hostile Behavior Toward Them from ET Palumbo | Injured Yes/No | Investiga- tion Conducted |
|---|---|---|---|---|---|---|
| Violet Luoma | Mail Processor Part Time Flexible PS-04 | Female | 151/ E. McLean | Yes - See E. McLean Testimony (Affidavit B) | Yes | Yes |
| Adrienne Maddox | Mail Processor Full Time PS-04 | Female | 1) 142/ Unknown  2) 151/ T. Hairston | 1) Yes. Exhibit 21, Grievant Statement dated 10/26/00. Unknown Recipient.  2) Yes. Exhibit 23, Grievant Statement dated 04/16/00. Unknown Recipient. | No | Unknown |
| Carrie Scott | Mail Processor Full Time PS-05 | Female | 150/ P. Smith & S. Mario | No | No | Unknown |
| Virginia Bridges | Distribution Clerk Full Time PS-05 | Female | 151/ E. McLean | No | No | Unknown |
| Robin Moore | Mail Processor Part Time Flexible PS-04 | Female | 351/ Unknown | Yes - Exhibit 16 dated 09/01/01 - Unknown Recipient | No | Unknown |

**(Exhibits 1, 3-6, 16, 21, 23)**

7

*Record evidence* reveals that the APWU also requested information and documents relative to processing a grievance, regarding hostile environment on 08/04/01. **(Exhibit 15)**

*Record evidence* submitted by the complainant is as follows:
- Postal Service Article/Publication titled, *"Are You Afraid to Come to Work"* **(Exhibit 17)**
- 02/18/98 document to PCES Executives, Subject: Voice of the Employee Workplace Relationships **(Exhibit 25)**
- 11/24/99 Memorandum for All Employees, Greensboro, Subject: Basic Work Rules and Regulations **(Exhibit 26)**
- Grievant Statement, A. Maddox, 10/06/00 **(Exhibit 20)**
- Witness Statement, Unknown Employee, 10/27/00 **(Exhibit 21)**
- Witness Statement, A. Wattlington, 11/30/00 **(Exhibit 22)**
- Grievant Statement, A. Maddox, 04/15/00 **(Exhibit 23)**
- Witness Statement, B. Cotton, 05/03/00 **(Exhibit 24)**

## REMEDY REQUEST

*VIOLET I. LUOMA* requests the following as a resolution to this complaint of discrimination:
1) $300,000
2) Anger management classes for Mr. Palumbo
3) That this injury not be held against her if she should try to transfer to another Postal facility
4) That she be able to use 12 weeks of Family Medical Leave if needed. **(AFFIDAVIT A)**

*EDWARD C. MCLEAN* testified that he thinks that Violet Luoma is entitled to as many weeks as a medical provider deems necessary under FMLA. **(AFFIDAVIT B)**

*ROGER N. QUINCOSES* testified that he has no authority to grant any of the requests made by Ms. Luoma. They can refer Mr. Palumbo to EAP if that would be satisfactory. **(AFFIDAVIT C)**

*CHARLES F. MARTIN* testified that he is not a position to evaluate Ms. Luoma's medical condition and her wishes for compensation would be based on doctor's statements and her ability to continue to work. **(AFFIDAVIT D)**

*10*

## CLAIM FOR COMPENSATORY DAMAGES:

*VIOLET I. LUOMA* feels that the Postal Service's negligence entitles her to compensatory damages because through their negligence they cost her precious time with her dying father. Prior to her injury, she traveled each month to visit her father. Following her injury, due to her work conditioning schedule, she was only able to see him twice before he died. If she had not gone to work conditioning, she would not have been paid. She testifies that this hurts deep in her heart and has left her mad and bitter. She feels that she is entitled to compensatory damages because Maintenance Managers have covered this up. She feels if they had taken appropriate action when Mr. Palumbo's behavior was previously reported, that she would never have been injured.

*VIOLET I. LUOMA* included information regarding her injury, physicians, and treatments; states that she has not recovered from the injury; and testifies that she is not including medical costs until she knows if they will be paid by the Department of Labor.

*VIOLET I. LUOMA* is claiming non-pecuniary losses of $200,000 since she feels that the Postal Service was negligent when they did not take any action to ensure that female employees were protected from Mr. Palumbo's behavior, but rather, ignored the problem. She testifies that is embarrassing because this approximately 250 pound man trapped her like an animal and, she testifies, got pleasure out of seeing her suffer. She was completely humiliated by his actions. She felt as if he raped her and that the Postal Managers just watched.

(AFFIDAVIT B)

G. Dawn Ahearn
EEO Complaints Investigator

09-26-02
Date

*/1*

# PLAINTIFF'S SUBMISSION "D"

CERTIFIED # 7001 1140 0000 5653 3271

(1)

U.S. Postal Service
EEO Investigative Affidavit *(Complainant)*

| Page No | No. Pages | Case No |
|---------|-----------|---------|
| 1 | 10 | 1-D-271-0007-02 |

| 1  Affiant's Name (First, Middle, Last) | 2.  Employing Postal Facility |
|---|---|
| Violet Irene Luoma | Processing & Distribution Cente |

| 3  Position Title | 4.  Grade Level | 5.  Postal Address and Zip +4 | 6.  Unit assigned |
|---|---|---|---|
| Mail Processor | 05 | Greensboro, NC 27409 | PL-151 |

### Privacy Act Notice

Privacy Act Notice. The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a, the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a, and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request, to an expert, consultant or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

### Important Information Regarding Your Complaint

This PS Form 2568-A, EEO investigative Affidavit *(Complainant)*, and the other form mentioned below, are being provided for you to use to fully respond to the accompanying questions. Mail or deliver your completed statement to the EEO complaints investigator within 15 calendar days of the date you received the forms. Use PS Form(s) 2569, *EEO Investigative Affidavit (Continuation Sheet)*, as needed, to complete your written statement. Remember to number the top of each page and sign and date the bottom of each page of your statement. If you return your statement by mail, the return envelope must be postmarked on or before the 15th calendar day after the date that you received the affidavit forms. Failure to complete your statement and return the forms within the allotted time period could result in your complaint being dismissed based upon your failure to proceed. EEOC complaints processing regulation, 29 C.F.R. 1614.107(a)(7), states, in part, [A complaint may be dismissed] "Where the agency has provided the complainant with a written request to provide relevant information or otherwise proceed with the complaint, and the complainant has failed to respond to the request within 15 days of its receipt, or the complainant's response does not address the agency's request, provided that the request included a notice of the proposed dismissal."

7.   Statement *(Use Form 2569 if additional space is required.)*

I, Violet Irene Luoma, is being assisted by my Representative Cookie Scott whose mailing address is PO Box 14085, Greensboro, NC 27415-4085. I, Violet Irene Luoma feel that I am being discriminated against because of my sex as a female when the following incident happened: On September 1, 2001, at approximately 0430 am, I, Violet Irene Luoma, was running mail on Delivery Bar Code Sequence Machine #9 when some trays got stuck up on the belt.

Electronic Technician Keith Murphy came and removed all the trays but two and said he would be back when we were ready for him to get the last two down. Electronic Technician Richard Palumbo was working on (Continued)

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date |
|---|---|
| *Violet Irene Luoma* | 13 June 2002 |

PS Form 2568-A, March 2001

/2.

AFFIDAVIT A *Page 1 of 11*

**UNITED STATES**
**POSTAL SERVICE®**
EEO Investigative Affidavit *(Continuation Sheet)*

| Page No. | N~~u~~ ~~L~~ges | Case No. |
|---|---|---|
| 2 | 10 | 1-D-271-DDD7-02 |

Delivery Bar Code Machine #6 when he looked over and started complaining

that those trays were still up there and wanted to know why Keith Murphy

did not get them down. Michelle Apple, my machine partner, and I explained

that Keith Murphy was on his way to get them but he just started yelling to

move our empty trays (which were not in his way) and to move the U-cart out

of his way. He stated that he was not suppose to touch or move anything

and just kept waving his arms to get the stuff out of his way. I said o.k.,

I will move it, so I did. I picked the trays up off the floor, which they

were in two neat stacks and put them up on the belt. As I stepped behind

the U-cart and started to move it forward, Richard Palumbo came pushing

his ladder into the U-cart, pushing me up against the machine. Michelle

Apple was yelling to him, you are squishing her. He then stopped, went up

the ladder, slammed the mail down the chute, got down and moved the ladder.

Meanwhile, Michelle Apple went running off to report this incident to

Supervisor Eddie McLean, Jr. When Richard Palumbo went walking away, I said

I cannot believe you just did that to me. He said what, I did not see you

there. That was not true. He was staring right at me when he did it. I

then started sweeping the mail on my machine and I could feel that my arm

and shoulder was injured. I reported this to Supervisor Eddie McLean and

was removed off the workroom floor. I then went to the Emergency Room at

Moses Cone Hospital and was treated for a sprained Muscle to my arm and

shoulder. It is now June 2002, and I have been out of work for over 9 months

I have been to numerous Doctors along with therapy as well as Surgery.

At the time of my injury, I was and still am a Part-time Flexible employee

who started with the Postal Service on January 30, 1999. I was working in

Pay Location 151 which is Automation- Delivery Bar Code Sequence Machines.

1) My name is Violet Irene Luoma and I am a Part-Time Flexible (Continued)

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---|---|
| Violet Irene Luoma | 13 June 2002 |

PS Form 2569, March 2001

*13*

AFFIDAVIT *4 Aug 20___*


Mail Processor Clerk at the Processing and Distribution Center located at 1120 Pleasant Ridge Road in Greensboro, North Carolina, 27409. I work on Tour 1 and at the time my work hours were 10:30 pm thru 7:00am. I started working for the Postal Service on January 30, 1999. At the time of my injury, my work hours and location were the same as stated above. 2) I, Violet Irene Luoma, answered questions number 2 and 3 beginning on Line 7 on Form 2568-A and continued my statement on Form 2569 on Pages 1 and 2.

**3a)** The following employees were treated differently than me: **Marvin Weems, Black/Male, Mail Processor, Pay Location 151.** Mr. Weems works on the Delivery Bar Code Sequence Machines and has an Electronic Technician Richard Palumbo service his machine. However, Mr. Weems has never been injured by Mr. Palumbo. I believe that Mr. Weems was treated differently that I was because he is male. The only people Mr. Palumbo is known to harass or injured are women. **King Core, Black/Male, Mail Processor, Pay Location 151.** Mr. Core works on the Delivery Bar Code Sequence Machines and has Electronic Technician Richard Palumbo service his machine. However, Mr. Core has never been injured by Mr. Palumbo. I believe that Mr. Core was treated differently than I was because he is a male. **Kevin Priestley, White/Male, Mail Processor, Pay Location 151.** Mr. Priestley works on the Delivery Bar Code Machines and has had Electronic Technician Richard Palumbo service his machine. However, Mr. Priestley has never been injured by Mr. Palumbo. I believe that Mr. Priestley was treated differently than I was because he is a male. When employees are hired by the Postal Service, they are told about the fact that the Postal Service has a **Zero Tolerance Policy on violence in the service.** Therefore, with all the complaints that have been made against Richard Palumbo by several female employees in Automation, my incident should have never happened. **The following employees are witnesses as to the events of**

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---|---|
| Violet Irene Luoma | 13 June 2002 |

PS Form 2569, March 2001

*14*

AFFIDAVIT


September 1, 2001 and the behavior of Mr. Palumbo that night: **Adrienne**

**Michelle Apple, Mail Processor, Pay Location 151, (336) 226-5613.** Ms.

Apple will be able to testify as to what happened on September 1, 2001.

She witnessed the entire scene since she was my machine partner that night.

**Robin Moore, Mail Processor, Pay Location 151, (336) 275-6886.** She will

testify as to the behavior and attitude of Mr. Palumbo on September 1, 2001.

She will testify how he was raging after leaving my machine after injuring

me. **Adrienne Maddox, Mail Processor, Pay Location 150, (336) 621-0518.**

She will testify to numerous problems she has had with Mr. Palumbo creating

an unsafe working environment for her. She will testify that management

did nothing to stop his harassment of her after she made numerous complaints.

to her Supervisor. **Carrie Scott, Mail Processor, Pay Location 150, (336)**

**954-7428.** She will testify that numerous females have had problems with

Mr. Palumbo. She will testify that in an interview with Supervisor Julie

Rutherford, she stated that she tried to discipline Mr. Palumbo because he

referred to her as a **bitch.** However, Labor Relations told Ms. Rutherford

that the employee's Supervisor had to be the one to issue the discipline.

She will testify that a grievance settlement sent to Maintenance Manager

Roger Quincoses that was due to Mr. Palumbo creating an unsafe working

environment for another female employee by the name of Lela Parker, was

put up on a board in the Maintenance office for all the employees to see.

This action resulted in the invasion of privacy of the female employee.

Furthermore, she will testify that she was verbally attacked in a Union

Membership Meeting by a Maintenance employee because of the grievance

settlement. She will testify that this action by the Maintenance Managers

was their way of not dealing with Mr. Palumbo. She will testify that after

this settlement Mr. Palumbo came over to her machine area and took a tray

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---|---|
| *Violet Irene Luoma* | *13 June 2002* |

PS Form 2569, March 2001

AFFIDAVIT A pg

of letter mail that had a sleeve on it down from the Tray Management

System and placed it in the middle of my Optical Character Machine while

my partner and I were running mail on the machine. Mr. Palumbo saw us

working on the machine but simply did it out of spite. After he placed

the mail on the machine, he just walked away. **Virginia Bridges, Distribution**

**Clerk, Pay Location 151, (336) 282-5449.** She will testify of the numerous

employees who had problems with Richard Palumbo. She will testify of the

failure of management to handled Mr. Palumbo's behavior which could have

prevented my injured. **4)** I am seeking **$300,000.00; Anger management**

**classes for Mr. Palumbo; This injury not to be held against me if I should**

**try to transfer to another Postal facility; Be able to use 12 weeks of**

**Family Medical Leave if needed.** **5)** Yes, but the case is being held in

abeyance until it is clear that I am able to return to work.

**(Continuation - PS Form 2569-C - Question 15:** Arm & Shoulder, Pain and

Inflammation, 1 tablet, two times a day, Dr. Singh, 10-11-01, 15 days,

Naproxen; Arm and Shoulder, Pain and Inflammation, Vioxx, 25mg, 1 tablet,

Once a day, Dr. Singh, 11-14-01, 20 days; Arm and Shoulder, Hydrocodone,

500mg, 1-2 tablets, Every 4-6 hours, Dr. Moye, 12-5-01, 5 days; Arm and

Shoulder Pain, Propoxy, 650mg, 1 tablet, Every 6 hours, Dr. Paul, 1-10-02.

9 days; Arm and Shoulder Inflammation, Celebrex, 200mg, 1 capsule two

times a day, 1 capsule a day after day 14, Dr. Paul, 1-10-02, 30 days;

Arm and Shoulder Pain, Oxycodone, 500mg, 1-2 capsules, Every 4-6 hours,

Dr. Gray, 3-21-02, 4 days; Arm and Shoulder Pain, Propoxy, 650 mg, 1-2

tablets, Every 4-6 hours, Dr. Gray, 4-26-02, 4 days; Arm and Shoulder

Pain and Inflammation, Lodine, 400mg, 1 tablet, Twice a day, Dr. Gray,

5-17-02, 30 days. Please note My change of Address. 205 DAVis

Street. Randleman N.C, 27317.

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---------------------|-------------|
| Violet Irene Luoma | 13 June 2002 |

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **UNITED STATES POSTAL SERVICE®** EEO Investigative Affidavit *(Continuation Sheet)* | 6 | 10 | 1-D-271-0007-02 |

**************************************COMPENSATORY DAMAGES**************************************

1) I feel that I am entitled to compensatory damages because my injury could have been prevented if Postal Management had taken the complaints that had been made against Richard Palumbo seriously. He has verbally abused female employees and harassed several of my female co-workers to the point that they felt he was creating an hostile environment. However, no matter how many complaints or grievances filed his behavior contined. Postal Managers failed me and placed my whole livelihood at risk not to mentioned my health. Furthermore, on September 9, 2001, when Supervisor Edward McLean was asked why he did not go talk to Mr. Palumbo's Supervisor after my injury occurred, he said, "That's not my job. My job is to cover my (referring to himself) butt." His response made me feel like I was worth nothing to the Postal Service. His response was heard by Cookie Scott who was standing beside me when he made his statement. In fact he repeated it twice. I feel that I am entitled to compensatory damages because the Postal Service negligence cost me precious time with my dying father who passed in January 2002. Before my injury, I was travelling each month to spend time with my father. However, because of my Work Conditioning schedule I was only able to see him twice before he died. Had I not gone to Work Conditioning, I would not get paid. This hurts deep in my heart and has left me mad and bitter. The Postal Service has cost me so much that they do not have enough money in the bank to make up what has been done to me. No amount of money can make up for the time I

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---|---|
| Violet Irene Luoma | 13 June 2002 |

PS Form 2569, March 2001

AFFIDAVIT

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **UNITED STATES POSTAL SERVICE®** EEO Investigative Affidavit *(Continuation Sheet)* | 7 | 10 | 1-b-271-0007-02 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*COMPENSATORY DAMAGES\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1) Continued - lost with my father.  I feel I am entitled to compen-
satory damages because Maintenance Managers has tried to cover up
this dirty little secret.  Only when EEO inquired did Maintenance
Managers admit that there were several complaints filed against Mr.
Palumbo.  Prior to that, they only said Julie Rutherford, Supervisor
had complained.  Therefore, they lied at my expense.  This would have
never happened had they taken appropriate action.  According to the
Postal Service, they suppose to have a Zero Tolerance Policy.

2) Arm and Shoulder Sprained that turned out to ligament damaged and
required Surgery.

3) The Postal Service caused my injury when they failed to correct Mr.
Palumbo's behavior.  Postal Managers tolerated his abusive and
harassing behavior.  No matter how many females complained about
his behavior, they continued to unleash him on the female population.
Furthermore, all his victims seem to all work in Automation.  When
the Maintenance Managers refused to listen to a female Supervisor,
I did not stand a chance.  The following Postal Manager and Super-
visors are responsible for my injury: Roger Quincoses, Manager,
Maintenance, EAS-23 - Fail to take any action regarding any of the
complaints; Frank Martin, Supervisor of Maintenance Operations,
EAS - 16 - Refused to hear from some of my co-workers - Robin Moore
and Dee Fulton, on the day I was injured because of Mr. Palumbo's
behavior on their machine; Edward McLean, Jr, Supervisor of

---

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---|---|
| Violet Irene Luoma | 13 June 2002 |

PS Form 2569, March 2001

AFFIDAVIT A

***************************************************COMPENSATORY DAMAGES***************************************************

3) Continued - Distribution Operations - His words showed he did not value my life and safety.

4) 9-1-01 - Moses Cone Hospital - Dr. Arledge - Arm and Shoulder Sprain; 10-11-01 - Dr. Singh - Arm and Shoulder Pain (Numerous visits); 12-5-01 - Dr. Moye - Arm and Shoulder Pain; 1-10-02 - Dr. Paul (Numerous visits)- Arm and Shoulder Pain; 3-21-02 - Surgery - Dr. Gray - Arm and Shoulder Pain (Numerous visits).

5) Have limited use of my Arm and Shoulder. I am currently in Therapy helping my arm and shoulder to get stronger. It has changed my life in the fact that my life has been on whole until my arm heals. I have had to take all this medication. I was forced to miss out on spending time with my deceased father because of this incident.

6) Not Yet

7) No

8) Not at this time - Hopefully they will be paid by Department of Labor.

9) Not at this time (See #8 above)

10) Incomplete at this time since I am still under treatment.

11) $200,000.00 - The Postal Service was negligent when they did not take any action to make sure female employees were protected from Mr. Palumbo's behavior. They simply ignored the problem. It is embarrassing because this approximately 250 lb man had me traped like an animal and got pleasure out of seeing me suffer.

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Date Signed |
|---------------------|-------------|
| Violet Irene Luoma | 13 June 2002 |

PS Form 2569, March 2001

AFFIDAVIT

**UNITED STATES**
**POSTAL SERVICE**®
EEO Investigative Affidavit *(Continuation Sheet)*

| Page No. | No. Pages | Case No. |
|----------|-----------|----------|
| 9 | 10 | 1-D-271-0007-02 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*COMPENSATORY DAMAGES\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

11) Continued - I was completely humiliated by his actions.  It was if

he raped me and Postal Managers just watched. ——————— V.L.

12) Witnesses Michelle Apple and Cookie Scott ——————————— V.L.

End of Statement ———————————————— V.L.

*(signature: Violet Irene Luoma)*

**I declare under penalty of perjury that the foregoing is true and correct.**

Affiant's Signature
*Violet Irene Luoma*

PS Form **2569**, March 2001

Date Signed
13 June 2002

2.0

AFFIDAVIT A Page 9 of 11

U.S. Postal Service
**EEO Investigative Affidavit** *(Continuation Sheet Compensatory Damages)*

| Case No. | Page No. | No. of Pages |
|---|---|---|
| 1-D-271-0007-02 | 10 | 10 |

Check off all of the Statements that apply to you or that have applied to you at any time within the last two years.

☐ 1. There has been a change in my family status caused by marriage, divorce, or separation. The specific event which caused this change was _____, which occurred on (date) _____

☑ 2. There has been a death in my family or of someone close to me. The name of the deceased is EDWARD JUDD. His/her relationship to me was FATHER

☐ 3. I have had relationship problems.

☐ 4. I have had marital problems.

☐ 5. I have participated in Individual, marital, relationship, or family counseling.

☐ 6. I have been seriously ill or diagnosed with a serious illness.

☑ 7. A member of my family or someone close to me has been seriously ill or has been diagnosed with a serious illness. His/her relationship to me is MY FATHER

☐ 8. I, a member of my family, or someone close to me has had legal problems.

☑ 9. There has been a change in the number of people residing in my household. DAUGHTER DALINE

☑ 10. I have changed my residence. 205 DAVIS STREET RANDLEMAN, NC 27317

☐ 11. I have had financial difficulties. Check any that apply.

    ☐ Tax problems      ☐ New financial obligations
    ☐ Delinquent debts.      ☐ Other: _____
    ☐ Mortgage of foreclosure problems. _____

☐ 12. A traumatic event(s) occurred in my life, e.g., automobile accident, fire, flood, other natural disaster, victim of crime. The traumatic event(s) was: _____ which occurred on the following date _____ and that occurred on the following date _____

☑ 13. I, my spouse, or someone with whom I am/was living experienced a change in employment, for example: changed job, lost a job, was demoted or laid off, or was reduced in pay. HUSBAND JONATHAN

☐ 14. I have had dietary problems. Check any that apply.

    ☐ Rapid weight loss.      ☐ Rapid weight gain
    ☐ Anorexia.      ☐ Other: _____
    ☐ Bulimia.

☑ 15. I have taken prescribed medication for the following:

| | |
|---|---|
| ☑ Condition(s): ARM & SHOULDER PAIN | ☑ Condition(s): ARM & SHOULDER PAIN (SWELLING) |
| ☑ Medication(s): HYDROCODONE (500MG) | ☑ Medication(s): IBUPROFEN |
| ☑ Dosage(s): 1 TABLET | ☑ Dosage(s): 1 TABLET |
| ☑ How often taken: EVERY 4-6 HOURS | ☑ How often taken: 3-4 TIMES A DAY |
| ☑ Prescribed by Dr(s): ROBERT ARLEDGE | ☑ Prescribed by Dr(s): ROBERT ARLEDGE |
| ☑ When prescribed: 9-1-01 | ☑ When prescribed: 9-1-01 |
| ☑ For how long: 5 DAYS | ☑ For how long: 7 DAYS |

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Date Signed |
|---|---|
| *Violet Irene Luoma* | 13 June 2002 |

PS Form 2569-C, March 2001 (1 of 2)

21

AFFIDAVIT A page 10/11



U.S. Postal Service
# Certification

Case No.
I-D-271-0007-02

I have read the proceeding attached statement, consisting of __10__ pages, and it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001, Title 18 of the U.S. Code which states:

"Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and wilfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both."

## Privacy Act Notice

Privacy Act Notice. The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request, to an expert, consultant or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

## USPS Standards of Conduct

Postal Service regulations require all postal employees to cooperate in any postal investigation. Failure to supply the requested information could result in disciplinary action (ELM 666).

## Oath / Affirmation

Subscribed and (sworn) (affirmed) before me on this _____ day of _____, 20_____

Affiant's Signature (Sign in the presence of EEO Investigator)

Signature of EEO Complaints Investigator | Signature of Affiant

## Declaration

I declare, under penalty of perjury, that the foregoing is true and correct.

*(Affiant, sign and date if attached statement was not completed in the presence of the EEO Investigator.)*

Affiant's Signature
Vicki Irene Lumer

Date Signed
13 June 2002

PS Form 2571, May 2001

# PLAINTIFF'S SUBMISSION "E"

| 1. Affiant's Name (Last, First, MI) | 2. Employing Postal Facility |
|---|---|
| McLean, Edward C | Greensboro P+DC |

| 3. Position Title | 4. Grade Level | 5. Postal Address and Zip +4 27498-9700 | 6. Unit Assigned |
|---|---|---|---|
| SDO | 16 | 1120 Pleasant Ridge Rd. NC | Automation |

## Privacy Act Notice

Privacy Act Notice. The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request, to an expert, consultant or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

## USPS Standards of Conduct

Postal Service regulations require all postal employees to cooperate in any postal investigation.
Failure to supply the requested information could result in disciplinary action. (ELM 666)

7. Statement *(Continue on Form 2569 if additional space is required)*

My name is Edward C McLean Jr. Automation SDO. Tour One at the time of September 1, 2001. I had been in that position for Seven years. I am a male and was the relief Supervisor at that time. As far as I can remember Violet Luoma did have an accident on that date. She informed me that she was Struck by a U-Cart that was struck by a ladder which was being pushed by Richard Palumbo. I had the employee fill out all of the paper work for her injury. Employee did State that she thought that Palumbo pushed the ladder into her intentionally. Palumbo is a Electronic Technician. Palumbo's Supervisor at that time was Issac Maynard. At the time I did not think Palumbo's actions

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---|---|
| Edward C McLean | 8-23-02 |

PS Form 2568-B, March 2001

23

AFFIDAVIT

Were hostile. However I did speak to Issac Maynard about Mr. Palumbo and I suggested to Violet Luoma to speak w his supervisor. I have no knowledge if Richard Palumbo recieved a discussion or any disciplinary action. I did have another female employee tell me that Palumbo had a bad attitude. At this time I am not sure which one of my employee's told me that. I Know of Adrienne Maddox. She is assigned to another pay location. I am not aware of any problems between her or Palumbo. Carrie Scott is assigned to the same pay location as Adrienne Mad PL 150. Supervisors are Peggy Smith and Sandra Marion. I have no knowledge of any complaints by her. Virginia Bridges is assigned to my pay location at the time. She is a Union Steward as well as Carrie Scott. Mrs. Bridges has been on light duty for more than five years and works in the manual section. I rarely ever saw her on a daily bases. I am not aware of any complaints by Virginia Bridges. I think Violet Luoma is entitle to as many weeks as a medical provider deems neccesary und FMLA.

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature

Edward C M.....

Date Signed

8-23-02

PS Form 2569, March 2001

AFFIDAVIT B

The USPS does have a zero tolerance in the Work place. I have no Knowledge of any action taken by Richard Palumbo's immediate Supervisor.

---

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature

Edward C McLean

Date Signed
8-23-02

S Form 2569, March 2001

25

AFFIDAVIT B page

I have read the proceeding attached statement, consisting of ___3___ pages, and it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001, Title 18 of the U.S. Code which states:

"Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and wilfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both."

## Privacy Act Notice

Privacy Act Notice. The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses,

grants or other benefits; to a congressional office at your request, to an expert, consultant or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

## USPS Standards of Conduct

Postal Service regulations require all postal employees to cooperate in any postal investigation.
Failure to supply the requested information could result in disciplinary action (ELM 666).

## Oath / Affirmation

Subscribed and (sworn) (affirmed) before me on this __23__ day of __August__, 20 __02__

| Signature of EEO Complaints Investigator | Affiant's Signature (Sign in the presence of EEO Investigator) |
|---|---|
|  | Signature of Affiant  *Edward C McLee* |

## Declaration

I declare, under penalty of perjury, that the foregoing is true and correct.

*(Affiant, sign and date if attached statement was not completed in the presence of the EEO Investigator.)*

| Affiant's Signature  *Edward C McLee* | Date Signed  8-23-02 |
|---|---|

PS Form 2571, May 2001

26

AFFIDAVIT B

# PLAINTIFF'S SUBMISSION "F"

| 1. Affiant's Name (First, Middle, Last) | 2. Employing Postal Facility |
|---|---|
| Charles F. Martin | Greensboro P&DC |

| 3. Position Title | 4. Grade Level | 5. Postal Address and Zip +4 | 6. Unit assigned |
|---|---|---|---|
| Supervisor Maintenance | EAS-17 | 1120 Pleasant Ridge Road Greensboro, N.C. 27498 | Maintenance |

**Privacy Act Notice**

Privacy Act Notice. The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16, the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request, to an expert, consultant or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

**Important Information Regarding Your Complaint**

This PS Form 2568-A, EEO Investigative Affidavit *(Complainant)*, and the other form mentioned below, are being provided for you to use to fully respond to the accompanying questions. Mail or deliver your completed statement to the EEO complaints investigator within 15 calendar days of the date you received the forms. Use PS Form(s) 2569, *EEO Investigative Affidavit (Continuation Sheet)*, as needed, to complete your written statement. Remember to number the top of each page and sign and date the bottom of each page of your statement. If you return your statement by mail, the return envelope must be postmarked on or before the 15th calendar day after the date that you received the affidavit forms. Failure to complete your statement and return the forms within the allotted time period could result in your complaint being dismissed based upon your failure to proceed. EEOC complaints processing regulation, 29 C.F.R. 1614.107(a)(7), states, in part, [A complaint may be dismissed] "Where the agency has provided the complainant with a written request to provide relevant information or otherwise proceed with the complaint, and the complainant has failed to respond to the request within 15 days of its receipt, or the complainant's response does not address the agency's request, provided that the request included a notice of the proposed dismissal."

7. Statement (Use Form 2569 if additional space is required.)

Ref (.1) Charles F. Martin

Supr. Maintenance - Tour 3

I presently am assigned as SMO on Tour 3 that was effective in March of 2002. Prior to the, I was assigned as SMO on Tour I effective March 2001. I am not presently in charge of Mr. Palumbo.

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date |
|---|---|
| Charles F. Martin | 9-13-02 |

Ref (#2) My gender is male. I had no professional relationship with Ms. Luoma since she worked as a operators clerk.

Ref (#3) (a.) I was not aware of the accident at the time it happened but was told of it a day or so later. I had no official part in the accident report generation.

(b.) Yes, Mr. Palumbo was under my jurisdiction at the time of the incident

(c.) No, Ms. Luoma never reported to me about the incident. I personally do not know Ms. Luoma and do not believe I ever spoke with her.

(4.) No, there was no discussion on discipline issued to Mr. Palumbo, Neither he nor I, knew that an injury had taken place.

Ref (#4) (a) Yes, I do remember that Cookie Scott (APWU Union Steward) did come into my office to say that some clerks (unknown to me) felt that Mr. Palumbo had a "brash" personality and did not present himself in a

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature

Charles A. Martin

Date Signed
9-13-02

PS Form 2569, March 2001

AFFIDAVIT

page 20f5

cordial manner. I did call Mr. Palumbo in the office and asked him to try harder to present himself in a better light to others. I informed him of the complaint from Mrs. Cookie Scott. His statement to me was he had done nothing out of the ordinary and some of the clerks just didn't like him.

Ref (4) (b.) No, I do not know Mrs. Maddox and she was not under my supervision. I do not know who her operations supervisor was.

Ref (4) (c.) Yes, Carrie (Cookie) Scott did come in my office to speak to me as a APWU union representative (which Mr. Palumbo also belongs to) to state that some of the clerks had issue's with Mr. Palumbo's brash personality. I agreed that he could not be voted Mr. Personality and he may not be the type guy you would invite over to your house but he never to my knowledge harassed anyone.

Ref (4) (d.) No, I do not know Virginia Bridges to my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature
Charles A. Martin

Date Signed
9-13-02

PS Form 2569, March 2001

AFFIDAVIT

Ref (#5)    No, I am not in a position to evaluate her medical condition. Her wishes for compensation would be based as you know on doctor's statements and her ability to continue work.

Ref (#6)    Mr. Palumbo has not cursed, harassed, intimidated or bullied any individual to my knowledge. I do agree that he may not be Mr. Personality but he is of no danger to anyone in my evaluation.

Ref (#7)    I have spoken with Mr. Palumbo and he agrees to present a better attitude toward all employees. Mr. Palumbo is a good E.T. and always does what is ask of him without complaint.

---

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---------------------|-------------|
| *Charles F. Mast* | 4-13-02 |

PS Form 2569, March 2001

AFFIDAVIT D

U.S. Postal Service
# Certification

I have read the proceeding attached statement, consisting of __*4*__ pages, and it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001, Title 18 of the U.S. Code which states:

"Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and wilfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both."

## Privacy Act Notice

Privacy Act Notice. The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request, to an expert, consultant or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

## USPS Standards of Conduct

Postal Service regulations require all postal employees to cooperate in any postal investigation. Failure to supply the requested information could result in disciplinary action (ELM 666).

## Oath / Affirmation

Subscribed and (sworn) (affirmed) before me on this _____ day of _____, 20_____

Affiant's Signature (Sign in the presence of EEO Investigator)

| | |
|---|---|
| Signature of EEO Complaints Investigator | Signature of Affiant |

## Declaration

I declare, under penalty of perjury, that the foregoing is true and correct.

*(Affiant, sign and date if attached statement was not completed in the presence of the EEO Investigator.)*

| Affiant's Signature | Date Signed |
|---|---|
| | *9-13-02* |

PS Form 2571, May 2001

**AFFIDAVIT**

# AUTHORIZATION TO FURNISH MEDICAL RECORDS

TO WHOM IT MAY CONCERN:

I hereby authorize any physician, dentist, nurse, or other medical personnel, psychologist or counselor and any hospital, medical facility and/or other organization providing medical (including psychological and psychiatric) care, treatment, services and/or supplies or counseling to furnish to any representative of the United States any and all records, information and evidence in their possession, custody or control concerning the care, treatment, services and/or supplies furnished to me.

"Records" for purposes of this authorization shall include but not be limited to charts, office records, correspondence to or from any person, entity or organization, all hospital records regularly maintained concerning patients, all laboratory reports, all x-rays, and all reports furnished routinely or specially to any person, organization or entity including the patient, any representative of the patient or any insurance company.

I understand that the information authorized for release may include records which may contain information that indicates that I have a communicable or venereal disease which may include, but is not limited to, diseases such as hepatitis, syphilis, gonorrhea or the human immunodeficiency virus, also known as Acquired Immune Deficiency Syndrome (AIDS).

Upon presentation of this authorization or an exact reproduction thereof, you are directed to permit the personal review or reproduction of such records, information and evidence by any representative of the United States or to have you copy such records, information and evidence and transmit them to the United States at the cost of the United States. You are also authorized to transmit any slides or tissue specimens to a representative of the United States for examination purposes. You are permitted to speak to a representative of the United States concerning the patient's medical condition but are not required to do so. This authorization shall remain valid as long as the federal litigation to which it pertains is pending including any appeals. During its period of validity this authorization may be effectively presented repeatedly for releases of records and no custodian of records shall require the presentation of separate authorizations for each request for records.

Upon request, copies of any records furnished to the United States pursuant to this authorization will be furnished to the attorney representing the person to whom the records pertain.

SIGNATURE: _Violet J. Luoma_

SOCIAL SECURITY NUMBER: _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_

DATE OF BIRTH: _3-29-64_

DATE OF SIGNATURE: _3-12-04_

6

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


VIOLET LUMOA,             )
                                     )
          Plaintiff,    )
                                     )
     v.                   )     CASE NO. 1:03CV00783
                                     )
JOHN E. POTTER,        )
POSTMASTER GENERAL, and   )
THE UNITED STATES POSTAL   )
SERVICE,              )
                                     )
          Defendants.  )


## PLAINTIFF VIOLET LUMOA'S RESPONSE TO DEFENDANT UNITED STATES POSTAL SERVICE REQUESTS FOR ADMISSIONS ADDRESSED TO PLAINTIFF


<u>Request No. 1</u>:  You have received payments from the Department of Labor under the Worker's Compensation Program for treatments and lost wages associated with the incident occurring on September 1, 2001 that is the subject of this Complaint.

**Admitted.**

<u>Request No. 2</u>:  On or prior to September 1, 2001, Richard Palumbo, Electronic Technician, was not your regular or temporary supervisor or manager.

**Admitted.**

<u>Request No. 3</u>:  On or prior to September 1, 2001, you did not report or discuss any activities or actions or statements by Richard Palumbo to you supervisor or manager.

**Admitted.  Management knew about his conduct.**

1

<u>Request No. 4</u>: On, before or after September 1, 2001, you did not report or discuss Richard Palumbo and/or the incident that is the subject of this Complaint with Mr. Palumbo's regular or temporary supervisor or manager.

**Admitted. Michelle Apple discussed the incident with Frank Marlin.**

This the 4 day of May, 2004.

Romallus O. Murphy
Attorney for Plaintiff
1106 E. Market Street
P. O. Box 20383
Greensboro, NC 27420
336-273-1698

2

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that he has this day served the foregoing Plaintiff's Response to Defendant United States Postal Service Requests for Admissions Addressed to Plaintiff on defendants by depositing a copy of the same in the United States mail, in a first-class postage prepaid envelope addressed as follows:

Gill P. Beck
Assistant United States Attorney
101 South Edgeworth Street
Suite 400
P. O. Box 1858
Greensboro, North Carolina 27401

James E. Champion, Jr.
United States Postal Service Law Department
Philadelphia Field Office
P. O. Box 40595
Philadelphia, PA 19197-0595

This the 4 day of May , 2004.

Romallus O. Murphy
Attorney at Law
N. C. Bar No. 3177
P. O. Box 20383
Greensboro, NC 27420
336-273-1698
336-274-7947 (F)

3